## Salings v. Commonwealth.

(Decided September 23, 1913).

### Appeal from Edmonson Circuit Court.

1. **Intoxicating Liquors.**—Where facts are shown from which the jury may infer that the defendant sold the whiskey to the witness, a conviction will be sustained, although the defendant, himself, testified that he did not sell it, and had no interest in it.
2. **Intoxicating Liquors—Instructions.**—An instruction telling the jury that if they believed from the evidence beyond a reasonable doubt that the transaction detailed by the witnesses was a scheme or device to evade the local option law, was not misleading or improper.

N. T. HOWARD and JOHNSON & JOHNSON for appellant.

JAMES GARNETT, Attorney General; OVERTON S. HOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Bob Salings was indicted in Edmonson County, charged with violating the local option law by selling whiskey to Miles Duvall and Rance Merideth. On a trial of the case he was found guilty and judgment having been entered upon the verdict, he appeals.

The chief complaint made on the appeal is that the evidence does not warrant the submission of the case to the jury, and is insufficient to sustain the verdict. The testimony given on the trial is as follows:

Miles Duvall, as a witness for the Commonwealth, testified:

"Some time about a year ago I heard there was some moonshine whiskey over on Nolin River and Rance Merideth and I went over there—it was some four or five miles from my home. It was night, maybe 9, 10 or 12 o'clock when we got there. Several men there, Tom Poteet, George Brooks, Jim Loller and Bob Salings and maybe others. There was a keg of whiskey and a dim light. Did not know whose whiskey it was nor who lived there. Bob Salings helped draw and measure the whiskey. Don't know how much I got nor how much I paid for it. I think I got three quarts. I don't know what size jug. I placed the money on head of keg and a small boy got it. Don't know whose whiskey it was."

Cross-examined:

"I don't know whose whiskey it was—it was in the woods. I helped Salings draw some whiskey for himself after he drew mine. I left and went home."

Rance Merideth, called as a witness for the Commonwealth, testified:

"Went with Miles Duvall to get the whiskey. There were several men there—don't remember all of them—no one there would sell the whiskey. Bob Salings and Miles Duvall took the keg of whiskey and carried it up on the hill and Duvall came back with the jug of whiskey—my quart was in Miles' jug—I had given Miles the money for a quart. I did not go upon the hill where it was drawn out. It was in Edmonson County and in 1911."

The defendant testified as follows:

"I was there on the night in question, helped Duvall draw his whiskey and got some myself, and Duvall helped me draw mine, and I put my money on the head of the

keg. It was not my whiskey and I had no interest in the sale to Duvall and Merideth and got no part of the money. I think it was early in the night. I understood that the whiskey belonged to Elias Jack Merideth. A lantern was there."

Cross-examined:

"I live close by—I am a son-in-law of Bill Poteet— I don't know whose land—Bill Poteet has lease of land but I don't know just where the line is—Elias Jack Merideth had a 'still' close by. I may have been there once before—I did not have Government license at that time, but I paid for Government license since that time. (Defendant objected to question as to Government license being obtained since. Court overruled the objection and defendant excepted.) I paid for Government license last July but have not got them."

Was asked to tell circumstances under which he paid for license to which Commonwealth excepted. Witness stated that he was tried in Bowling Green in Federal Court on same charge and in a compromise with the attorney for the Government by which he was acquitted of the charge, the attorney for the Government suggested that he had better take government license and he thereupon paid for said license."

On this evidence the court in substance instructed the jury (1) that if they believed from the evidence beyond a reasonable doubt that Bob Salings sold the whiskey to Miles Duvall and Rance Merideth, they should find him guilty; (2) that if they believed from the evidence beyond a reasonable doubt that the transaction detailed by the witnesses were a mere trick or scheme by which to evade the law against the sale of liquor, they should find the defendant guilty; (3) that if they had reasonable doubt from all the evidence as to his being proven guilty, they should acquit him.

The evidence showed beyond question that somebody sold the whiskey to Duvall and Merideth. If the evidence of the two witnesses for the Commonwealth alone is considered, it is pretty clear that the case was made out; for Salings himself helped draw and measure the whiskey. He helped to carry the keg up on the hill. Duvall, who also helped carry the keg up on the hill, from his evidence, went there to buy whiskey, and when he had gotten what he wanted, he placed the money on the head of the keg, and a small boy got it. What the boy did with the money is not shown. On this evidence the jury had

a right to infer that Salings was selling the whiskey to Duvall, and that the taking of the whiskey upon the hill, and leaving the money on the head of the keg, was only a device to conceal the real nature of the transaction.

It is true that Salings himself testified that he helped Duvall draw his whiskey, and got some himself; that Duvall heped him draw his, and he put his money on the head of the keg. But it will be observed that he is not sustained in the latter statement by Duvall. The credibility of the witnesses was for the jury. They had a right to infer from the facts, if they did not believe Salings' testimony, that he was selling the whiskey to Duvall. The jury knew the witnesses and we cannot say that their verdict is palpably against the evidence.

The defendant was not prejudiced substantially by the instructions. Many tricks and devices are resorted to by those who sell whiskey, to conceal the real transaction. The transaction detailed by the witnesses was simply the transaction in which Duvall got the whiskey. He had this transaction alone with Salings and so the instruction could have referred only to Salings' conduct in that transaction.

The owner of whiskey would not set it out on the hillside and leave it there for any one who wanted some to help himself and pay for it or not, as he saw fit. The large profit that is made on the illegal traffic in whiskey in local option districts, is the reason that men engage in the business, and so they are sure to see that when the whiskey goes, the money is forthcoming. The risk of detection causes them to adopt many devices to hide the transaction. A very common device is the pretence that the whiskey is procured for another as an accommodation, the purchaser in fact dealing only with the pretended agent who takes the money, and goes off and brings back the whiskey. The jury here had a right to infer that Salings was preparing to defend himself, if charged with selling the whiskey, by drawing some for himself. Nobody else made any arrangement with Duvall. Salings does not explain why he took the whiskey himself, or how he knew that he might draw any of it, or why he acted as he did in regard to the whiskey. From these facts the jury were warranted in inferring that he was really the party who was selling the whiskey, and that the transaction as detailed by the witnesses was simply a device to conceal the illegal sale of the whiskey.

Judgment affirmed.